UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADAM E. MURPHY,

                            Plaintiff,

    v.

ERT MEDICAL OFFICER K. RODRIGUEZ, *et al.*,

                            Defendants.

No. 23-CV-6998 (KMK)

OPINION & ORDER

---

Appearances:

Adam E. Murphy
Goshen, NY
*Pro se Plaintiff*

Lisa Morgillo, Esq.
Orange County Attorney's Office
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Adam Murphy, proceeding pro se, brings this Action pursuant to 42 U.S.C. § 1983 against Defendant ERT Officers K. Rodriguez, Pullen, and Prelvukaj (the "Individual Defendants"), and Orange County (collectively, "Defendants"). (*See generally* Am. Compl. (Dkt. No. 9).)[1,2] He alleges that Defendants used excessive force against him and denied him

---

[1] Neither Party uses Individual Defendants' full names in their submissions to the Court.

[2] Although the Amended Complaint names "Wellpath Medical Dept." as a Defendant, the Court construes it to state claims against Orange County. As the Court explained when it ordered service of the initial Complaint, Wellpath is not a "'person' for purposes of Section 1983 and is therefore not a proper defendant." *Murphy v. Rodriguez*, No. 23-CV-6998, 2023 WL 5586051, at *1 (S.D.N.Y. Aug. 29, 2023) (citation omitted). In light of Plaintiff's pro se status, the Court again "construes the [Amended] Complaint as asserting claims against Orange County." *See id*.

medical care in violation of his constitutional rights. (*See id.*) Before the Court is Defendants' Motion To Dismiss. (Not. of Mot. (Dkt. No. 22).) For the following reasons, the Motion is granted.

## I. Background

### A. Materials Considered

Plaintiff has attached several exhibits to his Amended Complaint and Opposition Memorandum, (*see* Am. Compl. at 5; Opp. to Dismiss Claims ("Pl's Opp") at 3–14 (Dkt. No. 29)), and Defendants have submitted a declaration in support of their Motion To Dismiss, (Decl. of Lisa M. Morgillo, Esq. ("Morgillo Decl.") (Dkt. No. 23)).

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'" *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial

notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 724 F.2d 192, 195 (2d Cir. 1987)).

Because Plaintiff is proceeding pro se, the Court will consider the documents attached to his Complaint and Opposition. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 175 (S.D.N.Y. 2022) (considering exhibits attached to pro se complaint when deciding motion to dismiss); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).

Defendants have submitted a declaration with two additional exhibits: Orange County's grievance policy, (Morgillo Decl., Ex. E (Dkt. No. 23-5)), and a record of a grievance submitted shortly after the events at issue, (*id*., Ex. F (Dkt. No. 23-6)). The Court will consider both

3

documents, as "courts in this District routinely take judicial notice of the records of administrative bodies charged with administering prison grievance programs," including records related to a plaintiff's grievances. *See Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 6216724, at *2 (S.D.N.Y. Sept. 25, 2023); *see also Moreau v. Peterson*, No. 14-CV-201, 2015 WL 4272024, at *3 (S.D.N.Y. July 13, 2015) ("Where . . . exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies . . . ." (internal quotation marks and citation omitted)); *Moor v. Fischer*, No. 10-CV-4038, 2011 WL 2988527, at *2, 4 (S.D.N.Y. July 22, 2011) (taking notice of records related to a plaintiff's grievance and stating "the court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment" (quotation marks and citation omitted)).

B. Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are assumed to be true for the purposes of ruling on the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

This Action arises out of an incident on July 21, 2023, at the Orange County Jail. Plaintiff alleges that he received tobacco from an unnamed corrections officer. (Am. Compl. at 6.) Plaintiff admitted to possessing the tobacco, which is considered contraband. (*Id*. at 5.)[3] Defendants Rodriguez, Pullen, and Prevulkaj followed up by attempting to conduct a strip

---

[3] This fact is drawn from an incident report attached to the Amended Complaint. (Am Compl. at 5 (copy of an Orange County Jail Inmate Misbehavior Report dated July 21, 2023).) The Court draws no negative inference from this statement—it simply uses it to provide factual context.

4

search, presumably to see if Plaintiff possessed any other proscribed materials.  (*Id*. at 5.)  During the search, Rodriguez pepper sprayed Plaintiff and punched him in the head while Plaintiff's hands were cuffed behind his back.  And Pullen "slammed [Plaintiff] headfirst into a wall."  (*Id*. at 4)[4]

Plaintiff alleges that he attended multiple sick calls after the incident where he requested X-rays of his ribs.  However, medical staff delayed his X-ray for over a month, and he had not received results as of September 5, 2023.  (*Id*. at 6.)  Plaintiff seeks $500,000 in damages and the removal of Individual Defendants from their official positions.  (*Id*.)

C.  Procedural History

Plaintiff commenced this Action on August 7, 2023, and filed the Amended Complaint on September 5, 2023.  (*See* Am. Compl.)  Defendants filed a pre-motion letter in anticipation of the instant Motion.  (*See* Dkt. No. 19.)  In lieu of a pre-motion conference, the Court set a briefing schedule.  (*See* Order (Dkt. No. 21).)  Pursuant to that schedule, Defendants filed the instant Motion on January 5, 2024.  (*See* Not. of Mot. (Dkt. No. 22); Mem. of Law in Supp. ("Defs' Mem.") (Dkt. No. 24).)  Plaintiff filed his Opposition on February 14, 2024, (*see* Pl's Mem.),[5] and Defendants replied on February 20, 2024.  (Reply Mem. of Law ("Defs' Reply") (Dkt. No. 30).)

---

[4] Plaintiff's Opposition adds some general statements about "corruption" and abuses of power at the Orange County Jail, but that material does not appear to be connected to a particular Defendant.  (*See* Pl's Opp. 2.)  Plaintiff also states his intent to "file another 1983 on the officer who assaulted [him]."  (*Id*.)

[5] Although Plaintiff's Opposition was docketed after his deadline to file, Defendants received a copy of Plaintiff's submission on January 29, 2024—a week before Plaintiff's deadline expired.  (Letter from Lisa M. Morgillo, Esq., to Court (Feb. 9, 2024) (Dkt. No. 27).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

6

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Protection Resources, Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

When a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics and citation omitted).  Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation

omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics, internal quotation marks, and citation omitted)).

B.  Analysis

Defendants argue that any claims against the Individual Defendants should be dismissed for failure to exhaust. (Defs' Mem. 5–7.)

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has made clear that this "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Moreover, the exhaustion requirement applies to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same). Although "failure to exhaust administrative remedies is an affirmative defense and 'inmates are not required to specially plead or demonstrate exhaustion in their complaints,'" *Valde-Cruz v. Russo*, No. 20-CV-9240, 2024 WL 809903, at *5 (S.D.N.Y. Feb. 27, 2024) (quoting *Pearsall v. Sposato*, No. 16-CV-6733, 2018 WL 1611385, at *2 (E.D.N.Y. Mar. 31, 2018)), "[d]ismissal for failure to exhaust is appropriate when 'on the face of the complaint, it is

8

clear that a plaintiff did not exhaust administrative remedies,'" *id.* (quoting *Abreu v. Schriro*, No. 14-CV-6418, 2016 WL 3647958, at *8 (S.D.N.Y. July 1, 2016)).

The grievance program applicable here is the DOCCS Inmate Grievance Program ("IGP"), which provides for a "three-step grievance process." *Colon v. Annucci*, 344 F. Supp. 3d 612, 641 (S.D.N.Y. 2018). The Second Circuit has described the process as follows:

> To initiate the process, an inmate must file a written complaint with the Inmate Grievance Resolution Committee ("IGRC"), a facility committee composed of inmates and appointed staff members. *See* N.Y.C.R.R. § 701.4–.5. . . . Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility. *See* N.Y.C.R.R. § 701.[5(c)] . . . . Finally, an inmate can appeal an unfavorable superintendent's determination to the Central Office Review Committee ("CORC"). *See* N.Y.C.R.R. § 701.[5(d)] . . . ; Directive No. 4040.

*Amador v. Andrews*, 655 F.3d 89, 96–97 (2d Cir. 2011); *see also Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *1 (S.D.N.Y. Sept. 8, 2016) (describing the same three-step IGP procedure). Only after completing all three steps of the IGP in a timely manner may an inmate initiate suit, *see Ross*, 578 U.S. at 638–39, "provided no exception to exhaustion applies," *White v. Westchester Cnty*, No. 18-CV-730, 2018 WL 6726555, at *6 (S.D.N.Y. Dec. 21, 2018).

Relevant here, the grievance process "must be completed before suit is filed." *Girodes v. City of New York*, No. 17-CV-6789, 2018 WL 3597519, at *4 (S.D.N.Y. July 26, 2018) (quoting *Burgos v. Craig*, 307 F. App'x 469, 470 (2d Cir. 2008) (summary order)); *see also Kasiem v. Switz*, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010) ("When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed."). "Completing the exhaustion requirements only after filing suit is insufficient." *Rayside v. City of New York*, No. 17-CV-4447, 2019 WL 1115669, at *2 (S.D.N.Y. Mar. 11, 2019) (alteration adopted) (quotation marks omitted).

However, the PLRA "contains its own, textual exception to mandatory exhaustion." *Ross*, 578 U.S. at 642. As the Supreme Court has explained:

9

> Under [Section] 1997e(a), the exhaustion requirement hinges on the "availability" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* (alteration adopted) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44. Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Plaintiff admits that he did not file a grievance regarding this claim. (*See* Am. Compl. at 7–8 (checking "no" when asked whether Plaintiff filed a grievance concerning these events giving rise to this case).) It is therefore clear from the face of the Amended Complaint that Plaintiff failed to exhaust his administrative remedies prior to filing suit.[6]

Plaintiff does allege that the grievance process was unavailable to him "because he was given a misconduct for contraband." (*Id.* at 7.) For support, Plaintiff attaches an incident report referencing a request for a grievance which he claims "never issued." (Pl's Opp., Ex. D.) But that explanation is unavailing.

---

[6] The Court need not address Defendants' argument that exhaustion is on its face implausible because Plaintiff initiated this Action less than two weeks after his claim arose. (*See* Defs' Mem. 5.)

First, the Amended Complaint lacks sufficient detail to make a plausible allegation of unavailability. Courts require more than a "conclusory assertion" of a circumstance that rendered grievance procedures unavailable when they otherwise should be. *See Vazquez v. City of New York*, No. 21-CV-1573, 2022 WL 17370156, at *13 (S.D.N.Y. Dec. 2, 2022); *see also Aviles v. Tucker*, No. 14-CV-08636, 2016 WL 4619120, at *4 (S.D.N.Y. Sept. 1, 2016) ("[T]he conclusory allegation in the [c]omplaint that [the p]laintiff was afraid to file a grievance, absent any explanation of the reason for [p]laintiff's fear or descriptions of prior scenarios of intimidation by correction officers, cannot support a finding that the grievance process was unavailable . . . ."); *Richardson v. City of New York*, No. 21-CV-5080, 2022 WL 18959559, at *7 (S.D.N.Y. Nov. 14, 2022) (same). Here, Plaintiff does not explain what about the misconduct report made the grievance process unavailable. For instance, he does not allege that the Orange County jail had a policy of denying grievances to inmates found to have committed misconduct. Nor does he allege that a particular prison official used the misconduct report to "thwart" his attempts at exhaustion. *Ross*, 578 U.S. at 644.[7] The misconduct report itself—which is attached to the Amended Complaint—makes no mention of denying Plaintiff a grievance. (*See* Am. Compl. at 5.) And Orange County's Grievance Policy similarly mentions no such consequence of misconduct. (*See generally* Morgillo Decl., Ex. E (Dkt. No. 23-5); *see also id*. at 2 ("No inmate shall be denied a grievance.").) Simply mentioning the report is therefore insufficient to plausibly allege unavailability.

---

[7] Plaintiff briefly states that he was in "fear of retaliation" because he was in possession of contraband that he allegedly received from an officer. (Am. Compl. at 6.) Apparently, that officer "has been fired and charged." (*Id*.) Plaintiff does not plausibly connect this fear to allegations of unavailability. But to the extent the two are related, Plaintiff's allegation that he requested a grievance negates any inference that this officer or others thwarted his use of the grievance process through "intimidation." *See Ross*, 578 U.S. at 644.

11

Second, judicially noticeable evidence undermines Plaintiff's allegations.  For one thing, the incident report regarding this Action states that "Murphy was issued [a] grievance."  (Pl's Opp., Ex. D.)  Putting that aside and accepting Plaintiff's allegation about how *that* grievance did not issue, other records indicate the grievance process was available to Plaintiff.  Defendants attach records indicating Plaintiff filed an unrelated grievance on August 4, 2023, just days after the events at issue in which he could have grieved Defendants' alleged use of force.  (*See* Defs' Mem. at 6; Morgillo Decl., Ex. F at 3 (Dkt. No. 23-6).)  And Plaintiff's other exhibits similarly fail to give rise to a plausible inference of unavailability under *Ross*.  Exhibit C to Plaintiff's Opposition is a completed grievance form regarding an officer propositioning and assaulting Plaintiff, coupled with a letter denying that grievance on the merits.  (Pl's Opp., Ex. C.)  And Exhibit B contains multiple letters from the Commission of Corrections and Office of the Inspector General regarding Plaintiff's complaints of corruption at Orange County Jail.  (*Id.*, Ex. B.)[8]  While the events in each letter do not appear to relate to this Action, they all make implausible Plaintiff's allegations of unavailability.

Accordingly, the Amended Complaint must be dismissed "without prejudice until such a time as [Plaintff] exhausts all available administrative remedies."  *See Valde-Cruz*, 2024 WL 809903, at *8; *see also Hydara v. Burger*, No. 14-CV-1415, 2018 WL 1578390, at *5 (S.D.N.Y. Mar. 29, 2018) (dismissing complaint where "[the p]laintiff allege[d] no facts from which the

---

[8] The Court agrees with Defendants that none of these other documents, itself, establishes exhaustion.  (*See* Defs' Reply 2–5.)  Each document post-dates this Action by several months, (Pl's Opp., Ex. B (letters dated November 9, 15, and 29, 2023); *id.*, Ex. C (grievance form dated November 28, 2023, decision dated November 28, 2023, and letter dated December 8, 2023)), and thus cannot plausibly allege that Plaintiff exhausted "*before* filing his initial complaint in federal court," *Albritton v. Morris*, No. 13-CV-3708, 2018 WL 1609526, at *10 (S.D.N.Y. Mar. 29, 2018) (emphasis in original).

Court could infer that the IGP was unavailable to him" (quotation marks omitted)); *Henrius v. County of Nassau*, No. 13-CV-1192, 2016 WL 1178358, at *6 (E.D.N.Y Mar. 24, 2016) (granting motion to dismiss "[s]ince . . . it [was] clear from the face of [the] complaint, and the documents attached thereto, that [the plaintiff] did not properly exhaust all available remedies . . . and there [were] no allegations . . . from which it may reasonably be inferred that administrative remedies were not available to him with respect to such conduct").[9]

### III. Conclusion

For the foregoing reasons, Defendants' Motion is granted. Because this is the first adjudication of his claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies the Court has identified, Plaintiff must do so within 30 days of the date of this Order. The second amended complaint will replace, not supplement, the previous complaints. The failure to timely file a second amended complaint may result in the dismissal of this Action with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 22.)

SO ORDERED.

Dated:   September 25, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

[9] Because exhaustion is a threshold requirement to Plaintiff's Action, the Court need not consider Orange County's argument that Plaintiff failed to allege municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See* Defs' Mem. 7–9.)

13